CITY OF MAGNOLIA 4A ECONOMIC DEVELOPMENT CORPORATION and City of Magnolia 4B Community Development Corporation, Petitioners,

v.

David SMEDLEY, Respondent

No. 16-0718

Supreme Court of Texas.

OPINION DELIVERED:
October 27, 2017

Ramon G. Viada, III, Viada & Strayer, The Woodlands, TX, for petitioners City of Magnolia 4A Economic Development Corp. and City of Magnolia 4B Community Development Corp.

Roger W. Hughes, Adams & Graham, L.L.P., Harlingen, TX, for amicus curiae Texas Municipal League.

Bill Davis, Office of the Attorney General, Assistant Solicitor General, and Scott A. Keller, Office of the Attorney General, Solicitor General, Austin, TX, for amicus curiae The State.

Jonathan Parchman and K.C. Ghanean, Parchman Law Group, PLLC, The Woolands, TX, for respondent David Smedley.

PER CURIAM

In this case, we must determine whether the twenty-day period to bring an interlocutory appeal ran from the petitioners' initial plea to the jurisdiction or from their later motion for summary judgment, both of which challenged the respondent's claims on similar jurisdictional grounds. We hold that the twenty-day period ran separately from each motion, and that the petitioners timely filed their interlocutory appeal. Accordingly, we reverse in part the court of appeals' judgment, which dismissed petitioners' appeal for lack of jurisdiction, and remand the case to the court of appeals for further proceedings consistent with this opinion.

The dispute arose from the alleged impoundment of surface water on respondent David Smedley's property, which he claims was caused by construction of the "Magnolia Stroll," a municipal hiking and walking path. The petitioners, municipal development corporations (MDCs), oversaw construction of the path.[1] Smedley's property abuts the Magnolia Stroll as well as a Chicken Express restaurant. In 2004, construction of a new parking lot at the Chicken Express created a damming effect, flooding Smedley's property with surface water. The City of Magnolia completed the Magnolia Stroll project in 2011. Smedley claims that negligent construction of the Magnolia Stroll caused further damming, resulting in damage to Smedley's property.

Smedley filed suit against several parties under multiple theories of liability, but this appeal concerns only the claims against the MDCs.[2] Smedley sought both injunctive relief and damages under three theories of liability: (1) negligence; (2) a taking under Article I, Section 17 of the Texas Constitution (the Takings Clause); and (3) a violation of section 11.086 of the Texas Water Code. Smedley sought to enjoin the MDCs from causing future drainage onto his property and require that they restore proper drainage.

In May 2015, the MDCs filed a motion to dismiss and plea to the jurisdiction, seeking dismissal under Rule 91a of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 91a (relating to dismissal of baseless causes of action). The MDCs argued that Smedley's claims lacked a jurisdictional basis. Specifically, they claimed: (1) Smedley had not pled facts constituting claims for which the Texas Tort Claims Act or the Texas Water Code waives governmental immunity; (2) Smedley did not allege sufficient facts as to the takings claim; and (3) the MDCs were immune from liability for any money damages under the Texas Local Government Code. Most importantly, the MDCs argued that Smedley had not alleged that the MDCs owned or controlled the property in question, which would be necessary for the MDCs to comply with any injunctive relief awarded to Smedley. Thus, the MDCs asserted, any claim for injunctive relief lacked redressability. On June 15, 2015,

---

1. Petitioners City of Magnolia 4A Economic Development Corporation and City of Magnolia 4B Community Development Corporation are MDCs operating under Chapters 501, 504, and 505 of the Texas Local Government Code and are "governmental unit[s]" for liability and procedural purposes. *See* TEX. LOC. GOV'T CODE §§ 504.107(b), 505.106(b).

2. Defendants B&C Constructors, Inc. and CJR Lucky, Inc. were not parties on appeal.

The City of Magnolia joined in the notice of appeal after the trial court granted in part and denied in part its motion to dismiss and plea to the jurisdiction. The court of appeals went on to affirm in part and reverse and remand in part as to the City's appeal. 533 S.W.3d 1, 19, 2016 WL 4045501 (Tex. App.-Beaumont 2016). The MDCS are the only petitioners in the appeal to this Court. The City of Magnolia remains a party in the trial court but is not a party in this Court.

the trial court granted the motion to dismiss as to Smedley's negligence claim and as to all claims for money damages. The trial court denied relief as to all other claims without providing a basis for its decision, leaving Smedley's claims for injunctive relief under the Water Code and Takings Clause. The MDCs elected not to appeal that ruling.

On June 24, 2015, the MDCs filed a hybrid no-evidence and traditional motion for summary judgment on the remaining claims for injunctive relief, arguing that Smedley's claims lacked a jurisdictional basis and evidentiary merit. *See* Tex. R. Civ. P. 166a (relating to motions for summary judgment). In the motion, the MDCs argued that Smedley could not establish standing as a matter of law because there was affirmative evidence that the MDCs do not own or control the Magnolia Stroll or Chicken Express, and thus could not perform the injunctive relief sought. Additionally, the MDCs argued that there was a lack of evidence as to Smedley's claims against them under both the Water Code and Takings Clause. The MDCs included some of the same evidence they had provided in their prior plea to the jurisdiction, along with new evidence, including the declaration of City Administrator Paul Mendes to establish that the MDCs do not own or control the Magnolia Stroll. On July 27, 2015, the trial court denied the motion for summary judgment without explaining the basis for its decision.

On August 3, 2015, the MDCs filed a notice of appeal of the trial court's denial of their motion for summary judgment. The crucial question as to the timeliness of the appeal was whether the twenty-day period to bring an interlocutory appeal ran from the trial court's denial of the MDCs' original motion to dismiss and plea to the jurisdiction, which was denied in part and granted in part on June 15, 2015, or from the trial court's denial of their hybrid motion for summary judgment, which was denied on July 27, 2015. *See* Tex. R. App. P. 26.1(b) (providing that a timely interlocutory appeal must be filed within twenty days after the challenged order was signed). If it was the former, the twenty-day period expired before the MDCs filed their notice of appeal, depriving the court of appeals of jurisdiction. If it was the latter, the MDCs filed their appeal timely.

The court of appeals held that because the MDCs' hybrid motion for summary judgment raised "essentially the same immunity-based arguments" as their earlier motion to dismiss and plea to the jurisdiction, the later motion was little more than a motion for reconsideration and the clock did not reset. 533 S.W.3d at 15, 2016 WL 4045501. Therefore, the court of appeals dismissed the MDCs' appeal for lack of appellate jurisdiction. *Id.* at 16, 2016 WL 4045501.

A party may appeal an interlocutory order that grants or denies a plea to the jurisdiction by a governmental unit. Tex. Civ. Prac. & Rem. Code § 51.014(a)(8). This Court considers "plea to the jurisdiction" not to refer to a "particular procedural vehicle," but rather to the substance of the issue raised. *Dep't of Crim. Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004). Generally, immunity from suit implicates subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Houston Belt &Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Therefore, both the MDCs' original motion to dismiss and plea to the jurisdiction, as well as their subsequent hybrid motion for summary judgment, constitute "pleas to the jurisdiction" for interlocutory-appeal purposes. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (holding

that appellate courts have jurisdiction under section 51.014(a)(8) to entertain interlocutory appeals from the denial of a plea to the jurisdiction or motion for summary judgment challenging subject matter jurisdiction). Additionally, because it is undisputed that the MDCs are "governmental units," they have the right to an interlocutory appeal of an order denying their plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8). However, an interlocutory appeal is an accelerated appeal and must be filed within twenty days after the judgment or order is signed. TEX. R. APP. P. 26.1(b), 28.1(a).

The parties disagree about the applicability of our decision in *City of Houston v. Estate of Jones*, 388 S.W.3d 663 (Tex. 2012) (per curiam), to the facts of this case. In *Jones*, the City of Houston filed a plea to the jurisdiction, which was denied, and several months later filed an amended plea to the jurisdiction, which was also denied. *Id.* at 664. As in this case, the court of appeals' jurisdiction to hear the case turned on whether the appellate timetable ran from the trial court's ruling on the original plea or the later amended plea. *Id.* We recognized as a guiding principle our decision in *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352 (Tex. 2001), in which we explained that "allowing interlocutory appeals whenever a trial court refuses to change its mind ... would invite successive appeals and undermine the statute's purpose of promoting judicial economy." *Id.* at 358. Thus, if the City's amended plea was merely a motion to reconsider, then the twenty-day clock did not reset.

In determining whether the City's amended plea was merely a motion to reconsider, we looked to the arguments in the City's two pleas. *Jones*, 388 S.W.3d at 667. Initially, the City argued that its immunity from suit had not been waived because the settlement agreement at issue

was neither an agreement for producing goods or services, nor was it properly executed, as required to waive immunity under Texas Local Government Code section 271.152. *Id.* at 665; *see* TEX. LOC. GOV'T CODE §§ 271.151–.152 (waiving a local government's immunity from a claim for breach of certain contracts). Jones presented a different argument for why the City's immunity had been waived, but he did not contest that section 271.152 did not waive the City's immunity. *Jones*, 388 S.W.3d at 665. The trial court granted Jones partial summary judgment on the issue of liability, implicitly denying the City's plea. *Id.* The City later filed an amended plea to the jurisdiction, which relied on the same bases as its original plea, but additionally argued that the City's immunity was not waived because the agreement did not state its essential terms as required to waive immunity under section 271.152. *Id.* at 665–66; *see* TEX. LOC. GOV'T CODE §§ 271.151–.152 (waiving immunity for certain written contracts that state the essential terms of the agreements).

While the City had asserted a new reason why it believed its immunity had not been waived, we determined that this new assertion was a change in "form without substance," as the City "failed to address a contested issue or raise an issue" the City had not already asserted in its first plea. *Jones*, 388 S.W.3d at 667. Because we found no new grounds asserted in the amended plea, we concluded that the City's amended plea was a motion to reconsider and affirmed the court of appeals' dismissal of part of the City's appeal because the twenty-day period had expired. *Id.* We explained that "[p]ermitting appeals under circumstances such as these would effectively eliminate the requirement that appeals from interlocutory orders must be filed within twenty days after the challenged order is signed." *Id.*

Under *Jones*, the touchstone of our analysis was whether the later plea to the jurisdiction was a new and distinct motion or a mere motion to reconsider. *Id.* Our determination that the City "did not assert a new ground" in its amended plea was dispositive. *Id.* Beyond that, *Jones* contains little guidance in finding the line between mere changes in form and changes substantial enough to warrant resetting the appellate clock.

Smedley asserts that the MDCs' hybrid motion for summary judgment was nothing more than a motion for reconsideration, which cannot reset the appellate clock for an appeal. The MDCs assert that their motion for summary judgment was sufficiently different in form and substance and that they therefore should have had a full twenty-day period from the time the motion was denied to file their interlocutory appeal.

Both parties discuss at length the different procedural vehicles used, in the abstract, without directly addressing whether the substance of the two relevant motions differed substantially. While the analysis depends more on content than form, the differences between those procedural vehicles inform our analysis. The MDCs contend that because the original motion was a pleadings challenge and the later motion was an evidence-based motion for summary judgment, the later motion is distinct from the first and not a mere motion to reconsider. This argument is compelling. A pleadings challenge argues that the plaintiff has not alleged facts that, if proven true, constitute a valid claim over which there is jurisdiction. *Miranda*, 133 S.W.3d at 226. This is a different proposition than arguing that the discovered evidence fails to prove or even affirmatively negates the plaintiff's claim. *See, e.g., id.* at 226–27 ("When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. . . . However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do."). While in this case the two motions are grounded in many of the same underlying jurisdictional theories, a bird's-eye view of the arguments ignores the substantial differences in the nature of the two motions.

In *City of Houston v. Harris*, 192 S.W.3d 167 (Tex. App.—Houston [14th Dist.] 2006, pet. denied), the Fourteenth Court of Appeals addressed a similar issue, holding that it had jurisdiction over an appeal of a denial of a second plea to the jurisdiction, after a first plea to the jurisdiction had also been denied and appealed. *Id.* at 169–70. The court explained:

> [T]here is no real question of appellate jurisdiction in this case. . . . [T]he City has raised different issues with each appeal. The first appeal involved a challenge to the sufficiency of the pleadings, and the second appeal involves a challenge to the existence of jurisdictional facts, which requires an examination of evidence to determine, in summary judgment fashion, whether plaintiffs have evidence to support the claim pled. . . .

*Id.* at 170. While *Harris* issued before *Jones*, the rationale for the court of appeals' decision in *Harris* is consistent with *Jones* and is persuasive here. In *Harris*, the court of appeals looked to the two relevant motions and determined that they were sufficiently different to warrant a separate twenty-day period. *Id.*

Here, the MDCs argued in their original plea to the jurisdiction that Smedley had not alleged any facts that, if proven true,

would constitute a claim against them and that Smedley had not alleged facts showing that the MDCs could provide the requested injunctive relief. The MDCs made immunity-based arguments, but the plea's primary emphasis was Smedley's failure to allege facts. Included with this motion were the bylaws and articles of incorporation of both MDCs.

The MDCs' later motion for summary judgment, however, argued that in light of the discovered evidence, there was no evidence as to the claims under the Water Code or Takings Clause, and that there was affirmative evidence that the MDCs did not own or control the Magnolia Stroll, preventing them from being able to provide injunctive relief. In support of their motion, the MDCs again offered the bylaws and articles of incorporation, along with the declaration of Paul Mendes, an alley identification report surveying land near the Magnolia Stroll, City Ordinance No. 113, Plaintiff's Additional Supplemental Response to City of Magnolia Interrogatory No. 7 and Production Request No. 10, and Plaintiff's First Amended Petition.

Based on the substance of the two motions, the MDCs' hybrid motion for summary judgment cannot be considered a mere motion for reconsideration of the initial plea to the jurisdiction.[3] In their original plea to the jurisdiction, the MDCs' arguments were based either on the insufficiency of Smedley's allegations or on conclusions that, as a matter of law, Smedley's claims against the MDCs were barred based on governmental immunity. Unlike in *Jones*, in which the City of Houston simply adorned its second plea with an uncontested issue, the MDCs included new evidence in their motion for summary judgment that they alleged affirmatively negated elements of Smedley's claims—

most notably, their inability to provide the requested injunctive relief. Further, the MDCs' motion for summary judgment is easily distinguishable from their original plea to the jurisdiction based on the extensive evidence that the trial court considered for the first time, including the declaration of Paul Mendes, which the MDCs argue affirmatively negates the redressability of Smedley's claims.

Unlike in *Jones*, we conclude that the motions in this case are sufficiently different based on both their substance and procedural nature. We hold that the MDCs' hybrid motion for summary judgment was not a mere motion for reconsideration, but rather a distinct motion that merits an independent twenty-day interlocutory appeal period. Accordingly, without hearing oral argument, Tex. R. App. P. 59.1, we reverse the court of appeals' judgment dismissing the MDCs' appeal for lack of jurisdiction and remand the case to that court for further proceedings.

---

**3.** Importantly, we note that procedural vehicles are not alone a dispositive end to the

*Jones* analysis. The analysis must also involve an inquiry into the substance of the motions.